THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| MEJRA FERIZOVIC, *Plaintiff*, v. HILTON HOTELS ROSEMONT, et al., *Defendants*. | No. 25 C 656<br><br>Chief Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mejra Ferizovic brought this employment discrimination case against her former employer, Hilton Hotels Rosemont, a/k/a Hilton Rosemont/Chicago O'Hare, Vinakom, Inc., and VH-H Rosemont LLC ("Hilton"). (Dkt. 1). Her nine-count complaint alleges various claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*; the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et. seq.*; and Illinois state law. Hilton filed a partial answer on June 13, 2025, raising nine affirmative defenses. (Dkt. 34). Hilton moves to dismiss five of the nine counts in Ferizovic's Complaint under Fed. R. Civ. P. 12(b)(6). (Dkt. 35). And Ferizovic moves to strike all nine of Hilton's affirmative defenses. (Dkt. 38). For the below reasons, Hilton's Motion to Dismiss [35] and Ferizovic's Motion to Strike [38] are granted in part and denied in part.

## BACKGROUND

Mejra Ferizovic is a Muslim woman of Bosnian descent. (Dkt. 1 ¶¶ 11–13). She began working at the Hilton Rosemont/Chicago O'Hare as a housekeeper in 2002. (*Id.* ¶ 14). In 2016, Ferizovic started wearing a hijab at work. (*Id.* ¶ 17). She alleges that, after she made this decision,

1

Christina Tzakis, then-General Manager of the hotel, remarked that Ferizovic thought she could "go around and do whatever she wanted" just because she wore the hijab. (*Id.* ¶ 25). Stephanie Pontikis, a Hilton human resources representative, was present when Tzakis made the comment. (*Id.*) On another occasion, Pontikis accused Ferizovic of being "aggressive" when she spoke in limited English. (*Id.* ¶ 24).

In October 2019, Ferizovic suffered an undisclosed injury at work. (*Id.* ¶ 18). She filed a workers' compensation claim against Hilton Worldwide Holdings Inc. nineteen months later, in May 2021. (*Id.* ¶¶ 18–19). Additionally, during her employment, Ferizovic suffered from cervical radiculopathy and carpal tunnel. (*Id.* ¶¶ 28, 30). It is not clear from Ferizovic's Complaint whether her 2021 workers' compensation claim related to her 2019 injury or whether the 2019 incident caused or contributed to either her cervical radiculopathy or carpal tunnel. In any event, shortly after Ferizovic filed her workers' compensation claim, Tzakis asked if she "wanted to be fired." (*Id.* ¶ 20).

In all, Ferizovic alleges that she experienced several instances of mistreatment compared to her similarly situated colleagues. For example, she claims that other employees called in sick more frequently than she did yet were not disciplined as harshly and were not subject to as frequent of room inspections as she was. (*Id.* ¶¶ 21–23). Ferizovic reported the above instances of what she labels "harassment and discrimination" to Hilton's corporate office. (*Id.* ¶ 26). The harassment worsened after she complained. (*Id.* ¶ 27).

In 2022, Ferizovic underwent surgery to treat her cervical radiculopathy. (*Id.* ¶ 29). In May 2023, she asked for FMLA leave or, alternatively, for an adjustment or change in her working conditions because of her health conditions. (*Id.* ¶¶ 32–33). Her requests were denied. (*Id.* ¶ 34).

2

Hilton terminated Ferizovic's employment on Aug. 23, 2023. (*Id.* ¶ 35). Ferizovic filed a charge of discrimination with the Illinois Department of Human Rights and Equal Employment Opportunity Commission ("EEOC") on January 16, 2024. (Ex. A, Dkt. 1-1). The entirety of her charge states:

> I began my employment with Respondent on or about 2002. My most recent position was Housekeeper. During my employment I was subjected to harassment. On or about August 28, 2023, I was discharged. I believe I have been discriminated against because of my national origin (East European) and religion (Muslim), in violation of Title VII of the Civil Rights Act of 1964, as amended; and my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

(*Id.*) The EEOC dismissed Ferizovic's charge and issued her a notice of her right to sue on October 25, 2024. (Ex. B, Dkt. 1-2 at 1).

Ferizovic filed her Complaint on January 20, 2025. (Dkt. 1). Counts I–III allege discrimination, retaliation, and hostile work environment in violation of Title VII. (*Id.* ¶¶ 36–76). Counts IV–VI allege failure to accommodate and intentional discrimination, retaliation, and hostile work environment in violation of the ADA. (*Id.* ¶¶ 77–111). Count VII alleges a violation of the FMLA. (*Id.* ¶¶ 112–26). Finally, Counts VIII and IX allege Illinois tort claims for retaliatory discharge and intentional infliction of emotional distress ("IIED"). (*Id.* ¶¶ 127–38). Hilton moves to dismiss Counts II, IV, V, VIII, and IX. (Dkt. 35). It separately filed a partial answer on June 13, 2025, raising nine affirmative defenses, all of which Ferizovic moves to strike. (Dkt. 34; Dkt. 38).

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations "must be enough to raise a right to relief above

3

the speculative level." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). At the 12(b)(6) stage, the Court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences in his favor. *Heyde v. Pittenger*, 633 F.3d 512, 516 (7th Cir. 2011). However, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley*, 671 F.3d at 616 (citing *Iqbal*, 556 U.S. at 678).

Federal Rule of Civil Procedure 8(c) requires parties to set forth any affirmative defenses in their responsive pleadings. A motion to strike pursuant to Federal Rule of Civil Procedure 12(f) is the appropriate means of removing "impertinent or redundant matter in any pleading and is the primary procedure for objecting to an insufficient defense." *Van Schouwen v. Connaught Corp.*, 782 F. Supp. 1240, 1245 (N.D. Ill. 1991). Motions to strike are generally disfavored and affirmative defenses "will be stricken only when they are insufficient on the face of the pleadings." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). A court should only strike an affirmative defense if it appears beyond a reasonable doubt the pleader can prove no set of facts in support of his defense that would plausibly entitle him to relief. *See, e.g.*, *Mittelstaedt v. Gamla-Cedron Orleans LLC*, 2012 WL 6188548, at *2 (N.D. Ill. Dec. 12, 2012).

## DISCUSSION

### I. Hilton Rosemont's Motion to Dismiss

Hilton moves to dismiss Counts II, IV, V, VIII, and IX of Ferizovic's Complaint on three bases. First, it argues that she cannot proceed with three of her Title VII and ADA claims because she failed to exhaust her administrative remedies. (Dkt. 36 at 3–6). Second, it argues that Ferizovic's Illinois tort claim for retaliatory discharge is implausible on its face. (*Id.* at 6–7). And

4

third, it argues that the Illinois Human Rights Act ("IHRA") preempts Ferizovic's IIED claim. (*Id.* at 8–9).

### A. Administrative Exhaustion

Plaintiffs bringing employment discrimination claims under the ADA and Title VII are required to exhaust their administrative remedies before proceeding in court. Specifically, they may not raise any claims that were not "originally included in the charges made to the EEOC." *Sitar v. Ind. Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). There are two primary reasons for the exhaustion requirement: (1) to afford the EEOC with an opportunity to settle the matter and (2) to give the employer notice of the charges being levied against it. *Id.* But the Court must also read an EEOC charge liberally, especially where, as here, the complainant was not represented by counsel at the time she filed the charge. *See Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). Accordingly, a plaintiff may raise claims in court that are "like or reasonably related" to the allegations included in the EEOC charge. *Jenkins v. Blue Cross Mut. Hosp. Ins.*, 538 F.2d 164, 167 (7th Cir. 1976) (citation modified). The analysis focuses on whether there is a "reasonable relationship between the allegations in the charge and the claims in the complaint" and whether "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (citation modified). In effect, the Court looks to the factual relationship among the claims; at a minimum, the charge and the complaint must describe the "*same conduct* and implicate the *same individuals*." *Id.* (emphasis in original) (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994)).

Hilton first argues Ferizovic did not exhaust her failure to accommodate claim, which is premised on the allegation that, in May 2023, Ferizovic requested leave pursuant to the FMLA

5

"for a reason related to a medical condition," and that her request was denied. (Dkt. 1 ¶¶ 89–92). Her EEOC charge, on the other hand, merely alleges that she was "subjected to harassment" and "discharged" from her position as a housekeeper with Hilton, and that she believed she was being discriminated against in the workplace due to her "national origin (East European) . . . religion (Muslim) . . . and [] disability." (Ex. A, Dkt. 1-1).

Ferizovic's EEOC charge includes virtually no facts and does not contain the names of any individuals who she claims harassed and discriminated against her. Liberally construed, she grieved harassment and discrimination based on her nationality, religion, and disability. But "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA." *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999). Thus, the two are not ordinarily "like or reasonably related to one another." *Id.* The Seventh Circuit hewed closely to its holding from *Green* in *Riley v. City of Kokomo*, a case involving a plaintiff who stated in her EEOC charge that she "had been terminated from her job because of her disability, but [] omitted any allegation that [her employer] denied her a reasonable accommodation under the ADA." 909 F.3d 182, 190 (7th Cir. 2018). Both the district court and Seventh Circuit concluded that this omission precluded the plaintiff from pursuing her failure to accommodate claim in court. *Id.* Ferizovic's EEOC charge is even less specific than the plaintiff's in *Riley*, as that plaintiff at least noted a prior FMLA leave request in the charge. *Id.* Ferizovic omits all facts related to her disability (apart from that she had one), her requested accommodations, and Hilton's response from her EEOC charge, making it difficult even to compare its factual nucleus to the specifics of the Complaint. *See Chaidez*, 937 F.3d at 1004.

As best this Court can tell, Ferizovic's EEOC charge grieves a continued pattern of harassment at work based on her protected characteristics. (Ex. A, Dkt. 1-1). Compared to the

6

Complaint, this seems to map onto the way Tzakis and Pontikis are alleged to have spoken to and treated Ferizovic during her employment. There is nothing, though, to connect that harassing behavior directly to the denial of Ferizovic's request for FMLA leave. What is more, Ferizovic does not even claim in her Complaint who denied her FMLA leave, under what circumstances, or even the medical basis underlying her leave request. Without those details—in either the charge or Complaint—the Court cannot conclude that Ferizovic's failure to accommodate claim is related at all to her charge of harassment in "time, people, and substance." *Kristufek v. Hussmann Foodservice Co., Toastmaster Div.*, 985 F.2d 364, 368 (7th Cir. 1993).

The district court cases on which Ferizovic relies are all factually distinct from her own. (*See* Dkt. 44 at 2–4). Those cases decline to apply *Green*'s holding that failure to accommodate claims and ADA discrimination claims "are not like or reasonably related to one another" to situations where a plaintiff's discriminatory discharge is alleged to have been caused by or inextricably tied to a denied accommodation request. *Green*, 197 F.3d at 898; *see, e.g. Wamack v. Windsor Park Manor*, 836 F. Supp. 2d 793, 799 (N.D. Ill. 2011) (noting the defendant was alleged to have "failed to provide a reasonable accommodation specifically by terminating [plaintiff] without taking his requests for accommodation into account"). In those circumstances, an EEOC charge that only grieves discriminatory discharge may give rise to a later claim for failure to accommodate. And that logic makes sense because an investigation into the employee's termination should lead directly to evidence of the requested accommodation. But that is not the case here, where Ferizovic's EEOC charge only alleges "harassment" and provides her date of discharge. (Ex. A, Dkt. 1-1). There is no link between her harassment charge and her denied FMLA leave and the two do not "talk about the same conduct and the same individuals." *Mudgett v. Centegra Health Sys., Inc.*, 2006 WL 1806390, at *5 (N.D. Ill. June 27, 2006). Even considering

the passages of Ferizovic's Complaint that allege she was terminated because of her request to take FMLA leave, there are simply not enough details in the EEOC charge that could lead a reasonable investigator to uncover the facts surrounding her denied leave request. (*See* Dkt. 1 ¶¶ 53, 123–24). Ferizovic may not proceed with her ADA failure to accommodate claim, as alleged in Count IV of her Complaint.

The same is true of Counts II and V of Ferizovic's Complaint, which allege that Hilton retaliated against her for engaging in statutorily protected activities under Title VII (complaining of harassment and discrimination based on her religion and national origin) and the ADA (seeking FMLA leave). (Dkt. 1 ¶¶ 53). Again, Ferizovic's EEOC charge speaks generally of harassing conduct; it makes no mention of any complaints Ferizovic lodged with her managers about that conduct, nor does it reference her requests for and denials of any medical leave. Ferizovic thus failed to provide the EEOC with "minimally adequate factual specificity to allow the EEO office to conduct an investigation" into the statutorily protected conduct she now claims to have engaged in, or any Hilton conduct that was undertaken in retaliation for her protected activities. *Reynolds v. Tangherlini*, 737 F.3d 1093, 1100 (7th Cir. 2013).

At bottom, Ferizovic asks the Court to treat all the claims in her Complaint as related to her EEOC charge considering the exceptionally broad language she provided in the charge. But doing so would "eviscerate the statutory charge requirement" because it would allow plaintiffs to present the EEOC with one or two sentences claiming generalized discrimination or harassment and then proceed to bring several distinct and independent claims before the district court on theories previously unknown to both the EEOC and the employer. *Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 701 (7th Cir. 1999); *see Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) ("[T]he goals behind the requirement of prior resort to administrative relief

8

would be frustrated if the filing of a general charge with the EEOC would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship."). While the Court recognizes that "technicalities" should not serve to bar claims from proceeding in federal court considering the remedial nature of both Title VII and the ADA along with the typical lack of legal representation in drafting EEOC charges, "the requirement of some specificity in an EEOC charge is not a mere technicality." *Cheek*, 31 F.3d at 501 (citation modified). As Hilton rightly observes, allowing Ferizovic to proceed on her failure to accommodate and retaliatory discharge claims would adhere to a standard whereby "the *fewer* facts included in the EEOC charge, the *more* claims [a plaintiff] can raise in the district court." (Dkt. 46 at 4 (emphasis in original)). The Court declines to apply such a standard in this case. Counts II, IV, and V of Ferizovic's complaint are dismissed with prejudice for failure to exhaust.

      **B.**      **Implausibility**

Hilton next argues that the Court should dismiss Ferizovic's retaliatory discharge claim, as alleged in Count VIII of the Complaint. (Dkt. 36 at 6–7). Ferizovic contends that her August 2023 termination was in retaliation for her filing a workers' compensation claim over two years earlier, in May 2021, after which Tzakis asked if she "wanted to be fired." (Dkt. 1 ¶¶ 18–20).

A state tort claim for retaliatory discharge requires a plaintiff to show "(1) that she has been discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy." *Rehfield v. Diocese of Joliet*, 182 N.E.3d 123, 132 (Ill. 2021) (quoting *Bajalo v. Nw. Univ.*, 860 N.E.2d 556, 559 (Ill. 2006)). Termination in retaliation for "pursuing workers' compensation benefits" can give rise to a retaliatory discharge claim. *Wallace v. Chi. Transit Auth.*, 2015 WL 3630511, at *4 (Ill. App. Ct. June 10, 2015) (citing *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 357 (Ill. 1978)).

Hilton suggests that Ferizovic has failed to plausibly allege causation—i.e., that she was fired because of her workers' compensation claim. (Dkt. 36 at 7). It suggests that when an employee relies on "timing along" to support an inference of causation, courts "typically allow no more than a few days to elapse." (*Id.* (quoting *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012)). The length of time between Ferizovic's claim and termination is indeed long. But she does not rely on timing alone. She has also alleged—and the Court takes as true—that the hotel's general manager made an implicit threat to fire her immediately after she filed her workers' compensation claim. (Dkt. 1 ¶ 20). And she further outlines an escalating pattern of harassing conduct that followed her workers' compensation filing and culminated in her termination. (*See* Dkt. 44 at 8). Hilton does not reckon with these additional facts, instead pointing only to the time gap to suggest that Ferizovic has failed to plausibly allege retaliatory discharge. Moreover, each of the cases on which Hilton relies disposed of retaliation claims at summary judgment. *See, e.g.*, *Igaski v. Ill. Dep't. of Fin. & Prof. Reg.*, 988 F.3d 948, 959–60 (7th Cir. 2021) (recognizing suspicious timing alone will rarely create a triable issue of fact). Here, the Court is not tasked with determining whether there is a triable issue of fact on Ferizovic's retaliatory discharge claim but only whether the facts, taken together and as true, plausibly state a claim for relief. Though attenuated, Ferizovic has pled enough to survive the motion to dismiss stage. And discovery may yield more evidence to strengthen her position. *Igasaki*, 988 F.3d at 960. For these reasons, Hilton's motion to dismiss Count VIII of Ferizovic's Complaint is denied.

  **C.**  **Preemption**

Ferizovic alleges in Count IX of the Complaint that Hilton and its employees' conduct was so extreme and outrageous, and caused her to such severe emotional distress, that Hilton

10

should be held liable under Illinois law for IIED. (Dkt. 1 ¶¶ 135–38). Hilton argues that the IHRA preempts her IIED claim. (Dkt. 36 at 8–9).

The IHRA—like Title VII and the ADA—prohibits disability, national origin, and religious discrimination in the workplace. *See* 775 Ill. Comp. Stat. 5/2-101 to -102; *see also Evoy v. Ill. State Police*, 429 F. Supp. 2d 989, 1002 (N.D. Ill. 2006) (noting the IHRA's prohibitions are essentially coextensive with federal civil rights laws, including the ADA). The IHRA preempts all state tort claims that are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the [IHRA] itself." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997). This can include intentional tort claims—like IIED or battery, for example—but only if, in proving that tort, the plaintiff must rely on the "rights and duties created by the Human Rights Act." *Richards v. U.S. Steel*, 869 F.3d 557, 564 (7th Cir. 2017). Thus, "the key to preemption is not whether the facts that support a common law tort claim (like intentional infliction of emotional distress) would also support a claim under the Human Rights Act, but rather whether the plaintiff can prove the elements of the tort '*independent* of any legal duties created by the Illinois Human Rights Act.' " *Id.* (emphasis in original) (quoting *Maksimovic*, 687 N.E. 2d at 24).

Ferizovic's IIED claim rests entirely on her allegations of discrimination and harassment in violation of Title VII and the ADA. (*See* Dkt. 1 ¶¶ 135–36). She must rely on her rights to be free from harassment in the workplace, and her employer's concurrent duty to provide a harassment-free workplace, to substantiate her claim. Courts routinely apply IHRA preemption to IIED claims that, for example, "depend on allegations of sexual harassment" or rely on comments referring to an employee's disability. *See Quantock v. Shared Mktg. Sols.*, 312 F.3d 899, 905 (7th Cir. 2002); *Krocka v. City of Chicago*, 203 F.3d 507, 516–17 (7th Cir. 2000). Here, Tzakis's comment about whether Ferizovic desired to be fired after she had filed for workers' compensation

11

and Hilton's denial of her FMLA leave request in connection with her medical conditions are "inextricably linked" to her ADA claims. *Krocka*, 203 F.3d at 517. And Tzakis's and Pontikis's remarks about Ferizovic's limited command of the English language and use of a headscarf are inextricably linked to her Title VII national origin and religion claims. *Id.* The remaining allegations to which Ferizovic points in response to Hilton's motion to dismiss, (Dkt. 44 at 9), largely fail to even implicate Hilton or its employees' conduct and do not materially change the fact that the "core of [Ferizovic's] theory is that [she] was a victim of [] harassment" in violation of federal civil rights laws. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006); *see Smith v. Chi. Sch. Reform Bd. of Trs.*, 165 F.3d 1142, 1151 (7th Cir. 1999) ("Illinois permits litigation in common-law fashion of contentions that one party intentionally inflicted emotional distress on another; but if the distressing incidents reflected racial (or other) discrimination, the claim must be presented to the Illinois Human Rights Commission rather than to a court.") For these reasons, Ferizovic's IIED claim is dismissed.

## II. Ferizovic's Motion to Strike

The Court now turns to Feriovic's motion to strike all nine of Hilton's affirmative defenses. Hilton has agreed to withdraw its ninth affirmative defense for "Failure to State a Claim," and so Ferizovic's motion to strike that defense is granted. (Dkt. 34 at 20; Dkt. 43 at 2). The motion is denied, however, with respect to the remaining eight defenses.

Hilton first pleads the *Ellerth*/*Faragher* defense, which can protect an employer from vicarious liability for the harassing conduct of its staff if the employer exercised reasonable care to prevent harassing behavior and the employee unreasonably failed to take advantage of opportunities designed to avoid the harm. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Jackson v. County of Racine*,

12

474 F.3d 493, 501 (7th Cir. 2007). The defense does not apply when a supervisor's harassment results in a tangible adverse employment action like discharge. *McPherson v. City of Waukegan*, 379 F.3d 430, 439 (7th Cir. 2004). Because Ferizovic alleges that she faced material changes to the conditions of her employment and was eventually discharged, she claims the *Ellerth/Faragher* defense is inapplicable and ought to be stricken. (Dkt. 38 at 2). But Ferizovic has alleged at least some claims—her hostile work environment claim, for example—that do not require her to show that she was subjected to an adverse employment action and are subject to the *Ellerth/Faragher* defense. *See Saud v. DePaul Univ.*, 2020 WL 5702165, at *7 (N.D. Ill. Sept. 24, 2020) ("A plaintiff in a hostile work environment claim is not required to show that he was subjected to an adverse employment action."); *Smith v. Rosebud Farmstand*, 2015 WL 14070901, at *9 (N.D. Ill. Nov. 24, 2015) (recognizing the *Ellerth/Faragher* defense applies to Title VII hostile work environment claims). Because there is a set of facts under which Ferizovic could proceed on certain claims without having to prove that she was subjected to an adverse employment action, her motion to strike Hilton's *Ellerth/Faragher* defense is denied.

Next, Ferizovic asks the Court to strike Hilton's second through fifth affirmative defenses, which raise two statute of limitations and two administrative exhaustion defenses. (Dkt. 34 at 17–19). There are multiple limitations periods, filing windows, and exhaustion requirements that apply to Ferizovic's nine-count Complaint. And Hilton provides Ferizovic with notice of those requirements in its affirmative defenses. (*Id.*) Considering the length of time that Ferizovic worked for Hilton and the scope of her own allegations, it is conceivable that these defenses could come into play during this litigation. Moreover, while motions to strike are themselves disfavored, the Court is particularly wary of striking limitations and exhaustion defenses before discovery, considering defendants are often without the information they need to substantiate these defenses

at the pleading stage. *See, e.g.*, *Builders Bank v. First Bank & Tr. Co. of Ill.*, 2004 WL 626827, at *5 (N.D. Ill. Mar. 25, 2004) (noting it is often "unjust" to strike limitations defenses because a defendant "does not have sufficient evidence to support that defense" at the pleading stage considering failure to raise a limitations defense results in waiver). For now, Hilton has done enough to put Ferizovic on notice of its defenses and the Court allows for additional discovery into the underlying facts relevant to them. *See Crabtree v. Experian Info. Sols.*, 2017 WL 11473864, at *1 (N.D. Ill. Aug. 18, 2017). Ferizovic's motion to strike Hilton's second, third, fourth, and fifth affirmative defenses is denied.

It would be similarly premature to strike Hilton's sixth affirmative defense, which alleges that, to the extent Ferizovic failed to treat her emotional distress, she breached her duty to mitigate damages. (Dkt. 34 at 19). Ferizovic again contends that this affirmative defense is factually insufficient and mere "conjecture." (Dkt. 38 at 4). Like limitations defenses, mitigation defenses are difficult, if not impossible for defendants to plead before discovery. Accordingly, threadbare pleading of a mitigation defense is permissible. *See In Retail Fund Algonquin Commons, L.L.C. v. Abercrombie & Fitch Stores, Inc.*, 2010 WL 1873725, at *2 (N.D. Ill. May 10, 2010) ("The rationale behind permitting a threadbare mitigation defense at the outset of a case is that a defendant may not know the factual specifics of the plaintiff's mitigation efforts until after discovery, and thus a defendant should not be required to plead mitigation with factual specificity at the outset of the case."). Hilton has sufficiently put Ferizovic on notice that it will explore mitigation in discovery and Ferizovic's motion to strike Hilton's sixth affirmative defense is denied.

Hilton's seventh affirmative defense raises preemption as to Count IX, referring to its argument, with which the Court agrees, that Ferizovic's IIED claim is preempted by the IHRA.

14

(Dkt. 34 at 19; Dkt. 43 at 4). Considering the Court has dismissed Count IX, Hilton's seventh affirmative defense is stricken as unnecessary and moot.

Finally, Hilton's eighth affirmative defenses raises the prohibition on punitive and emotional distress damages for Ferizovic's FMLA claim. (Dkt. 34 at 20). "FMLA damages don't include emotional distress and punitive damages." *Arrigo v. Link*, 836 F.3d 787, 798 (7th Cir. 2016). Ferizovic seeks these damages in her Complaint but does not specify on what Counts, rendering Hilton's defense appropriate. Ferizovic's motion to strike Hilton's eighth affirmative defense is denied.

## CONCLUSION

For the reasons set forth above, Hilton's Motion to Dismiss [35] is granted in part and denied in part. Counts II, IV, and V of the Complaint are dismissed with prejudice. Count IX is dismissed without prejudice. Ferizovic may proceed with Count VIII, for retaliatory discharge. Ferizovic's Motion to Strike [38] is granted in part and denied in part. Hilton's seventh and ninth affirmative defenses are stricken; the rest remain.

_____
Virginia M. Kendall
United States District Judge

Date: October 20, 2025