THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| MEJRA FERIZOVIC, | ) ) ) ) |
| *Plaintiff*, | ) No. 25 C 656 |
| v. | ) ) Chief Judge Virginia M. Kendall |
| HILTON HOTELS ROSEMONT, et al., | ) ) |
| *Defendants*. | ) ) ) |

**OPINION AND ORDER**

This is an employment discrimination dispute between Plaintiff Mejra Ferizovic and the Hilton Defendants. There are two motions before the Court. The first is Hilton's motion to dismiss Count IX of Plaintiff's First Amended Complaint. (Dkt. 53). The second is Plaintiff's motion to strike Hilton's seventh affirmative defense. (Dkt. 57). The Court grants Hilton's motion to dismiss with prejudice and denies Plaintiff's motion to strike.

The Court provided the full factual background in its October 20, 2025, Order (Dkt. 48), so the following is relevant to, and derived from, the parties' filings relating to the two motions at issue. First, Hilton moves to dismiss Count IX from Plaintiff's First Amended Complaint. (Dkt. 53). Count IX is for intentional infliction of emotion distress. (Dkt. 50 at 12-15). The Court previously granted Hilton's motion to dismiss Plaintiff's IIED claim without prejudice, finding that Plaintiff's "IIED claim rests entirely on her allegations of discrimination and harassment in violation of Title VII and the ADA" and so dismissal was proper as the Illinois Human Rights Act preempted her IIED claim. (Dkt. 48 at 11) ("Courts routinely apply IHRA preemption to IIED claims that, for example, 'depend on allegations of sexual harassment' or rely on comments

1

referring to an employee's disability.") (citing *Quantock v. Shared Mktg. Sols.*, 312 F.3d 899, 905 (7th Cir. 2002)). For the reasons below, the Court finds preemption proper again.

"The IHRA is the exclusive remedy for civil-rights violations. . . . It preempts tort claims that are inextricably linked to allegations of sexual harassment." *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017) (quotes omitted). "To determine whether claims are inextricably linked," the Court asks "whether the plaintiff can establish a basis for imposing liability on defendants without reference to the legal duties created by the IHRA." *Id.* (cleaned up). In other words, the question is whether Plaintiff can "prove the elements of the tort '*independent* of any legal duties created by the Illinois Human Rights Act.'" *Richards v. U.S. Steel*, 869 F.3d 557, 564 (7th Cir. 2017) (quoting *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 24 (1997)). Plaintiff cannot. If the Court were to pull Plaintiff's civil rights claims from the complaint, there would be no independent basis for finding an IIED claim—the conduct Plaintiff alleges violated her civil rights for her discrimination claims underlies her IIED claim. (Dkt. 50, ¶¶ 11-35; 135-49). Indeed, Plaintiff pleads herself out of court as she expressly relies on the same allegations for her IIED claim as for her civil rights claim: "Plaintiff re-alleges Paragraphs 1 through 134 of this Complaint as Paragraph 135 of this Count IX" for IIED. (*Id.*, ¶ 135).

Plaintiff was a cleaner/housekeeper at a Hilton Hotel. She alleges that she was required to continually reclean a lobby bathroom after her supervisor would follow her into the bathroom to see if the job was done. Often the supervisor would criticize her work and make her clean the bathroom again. In an effort to avoid her claims being preempted by the IHRA, Plaintiff alleges in her reply brief (not in her complaint) that she was falsely imprisoned and being stalked by her supervisor. (Dkt. 61 at 4). Plaintiff attempts to create an IIED claim by saying that her supervisor followed her into "the bathroom 3-4 times a day," "waited for [her] to check into work to harass

2

her," and instructed her to repeatedly clean the bathroom and clean the floor after someone "defecated" on it, in order to claim that there is an independent basis for her IIED claim. (*Id.* at 6). Yet, there can be no separation between her civil rights allegations against her supervisor and these claims; in fact, they are the same claims that constitute her civil rights claim. *See Richards*, 869 F.3d at 564.

Plaintiff never alleged stalking in her complaint and the allegations Plaintiff highlights are the same allegations in her civil rights discrimination case and thus warrant preemption. (*See, e.g.*, Dkt. 50, ¶ 23). Finally, in a shotgun approach to alleging independent claims to salvage her IIED claim, Plaintiff asserts that "Illinois courts also recognize the common law privacy tort of placing another in a false light." (Dkt. 61 at 6). Of course, this claim and the other claims of stalking and false imprisonment are merely thrown in her reply brief and are not reflected in the Amended Complaint. At bottom, there is no independent basis for a common law claim for IIED based on Plaintiff's allegations as they are "inextricably linked" with the duties arising from the Illinois Human Rights Act. *Richards*, 869 F.3d at 564. Plaintiff does not—and cannot—dispute that the alleged IIED conduct falls within the subject matter covered by the Illinois Humans Rights Act. *See* 775 ILCS 5/2-102. This warrants preemption. 775 ILCS 5/8-111(D).

Even if this were not the case, Plaintiff's claim for IIED is facially implausible. To state a claim for intentional infliction of emotional distress under Illinois law, Plaintiff must plausibly allege three elements: "First, the conduct in question was truly extreme and outrageous. . . . Second, the actor intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would have caused such distress. . . . Third, the conduct in fact caused severe emotional distress." *Sun v. Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024). This tort does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities";

3

instead, "[l]iability is found only when the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (cleaned up). Accepting all "well-pleaded facts in the complaint as true and draw[ing] reasonable inferences" in Plaintiff's favor, Plaintiff's claim for intentional infliction of emotion distress is deficient. *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024).

Plaintiff's allegations fail to satisfy the first element of an IIED claim. Even the most generous read of her complaint shows that she was asked to do what her job required. (Dkt. 50, ¶¶ 135-49). Plaintiff alleges that she suffered intentional infliction of emotional distress because her supervisor (1) "inspect[ed]" her work (*id.*, ¶ 140), (2) asked her to "clean[] the bathroom 5-6 times a day" (*id.*, ¶ 141), (3) reprimanded her for allegedly failing to perform her work (*id.*, ¶ 142), (4) asked her "to clean the bathroom" again after allegedly failing to properly clean it the first time (*id.*, ¶ 143), (5) asked her to clean the bathroom after a guest "defecated on the floor" (*id.*, ¶ 144), (6) accused her of not "cleaning a stain on an ironing board" (*id.*, ¶ 145), (7) asked her to clean "leaves in front of the door and in the parking lot" (*id.*, ¶ 146), and (8) asked her to clean the stairs "with one hand" after she "injured her right shoulder." (*Id.*, ¶ 147). Plaintiff was a "housekeeper" at a Hilton hotel. (*Id.*, ¶ 14). By definition Plaintiff's job was to clean the hotel. That she was asked to repeatedly clean the bathrooms is not intentional infliction of emotional distress but a daily duty for a housekeeper at a luxury hotel that holds itself out for its high standards of cleanliness. None of these requests are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sun*, 99 F.4th at 1013 (quotes omitted). To be sure, an employee who must work under strict company polices, a difficult manager, repugnant cleaning conditions, and the

4

occasional ask that is outside the four corners of an employee's contract (e.g., cleaning the leaves) may make daily life difficult. Still, far more is required to plausibly state a claim for IIED. *Id.* "Determining whether a complaint states a plausible claim for relief [is a] context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plaintiff's claim is implausible and dismissed with prejudice. *Id.*

Turning now to Plaintiff's motion to strike, Plaintiff contends that the Court should strike Hilton's "Seventh Affirmative Defense for the same reasons stated in Plaintiff's prior motion to strike and pursuant to the Court's October 20, 2025 Order." (Dkt. 57 at 1). In the Court's October 20, 2025, Order, it stated that "Hilton's seventh affirmative defense raises preemption as to Count IX, referring to its argument, with which the Court agrees, that [Plaintiff's] IIED claim is preempted by the IHRA. . . . Considering the Court has dismissed Count IX, Hilton's seventh affirmative defense is stricken as unnecessary and moot." (Dkt. 48 at 14-15). Plaintiff provides no additional analysis why striking is proper. (Dkt. 57 at 1). Hilton opposes Plaintiff's motion to strike. (Dkt. 59 at 1-2). Hilton also seeks "leave to amend in a manner consistent with the Court's ruling on Defendants' pending motion" to dismiss Count IX. (*Id.* at 2).

Hilton's seventh defense for preemption states: "1. Plaintiff's claims, including those in Count IX are preempted by other law. 2. Plaintiff should therefore be barred from recovering in this case under any cause of action that is preempted by law." (Dkt. 52 at 19). The Court initially struck this defense as moot as it related to the then dismissed IIED claim in the October 20, 2025, Order. (Dkt. 48 at 14-15). As the Court is now granting Hilton's motion to dismiss Count IX for IIED with prejudice, to the extent that the affirmative defense solely relates to Count IX for IIED, it is of course moot. (*Id.*). To put a finer point on the ruling, however, Hilton's seventh defense for

preemption is not limited to Count IX. (Dkt. 52 at 19). Rather, it seeks preemption against "Plaintiff's claims" and "any cause of action that is preempted by law." (*Id.*) Except as it relates solely to its IIED claim in Count IX, Plaintiff has provided no basis for striking the remainder of the defense. (Dkt. 57 at 1); (*see also* Dkt. 38 at 4-5) (reciting case law but scant analysis why striking Hilton's defense for preemption is proper). The Court takes no position whether any of Plaintiff's remaining claims are subject to preemption; but, as read, Hilton's defense is not so narrow to become entirely moot by the Court dismissing Count IX. Because the defense is broader than just Count IX, and because Plaintiff has failed to carry its burden that the entire defense—as it relates to other claims—should be stricken, the Court denies Plaintiff's motion to strike the defense in full. "Affirmative defenses will be stricken only when they are insufficient on the face of the pleadings." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). "Motions to strike are not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense[.]" *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (quotes omitted); Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.").

## CONCLUSION

Defendants' Motion to Dismiss Count IX of Plaintiff's First Amended Complaint is granted; Plaintiff's claim for intentional infliction of emotional distress under Count IX is dismissed with prejudice. (Dkt. 53). Plaintiff's motion to strike is denied. (Dkt. 57).

_____
Virginia M. Kendall
United States District Judge

Date: February 9, 2026